IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:20-CT-3150-D

| | | |
|---|---|---|
| STEVEN DIXON PRENTICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM IN SUPPORT** |
| v. | ) | **OF DEFENDANT BUFFALOE'S** |
| | ) | **MOTION FOR SUMMARY** |
| STATE OF NORTH CAROLINA, *et. al.*, | ) | **JUDGMENT** |
| | ) | |
| Defendants. | ) | |

Defendant Eddie Buffaloe, Jr. ("Defendant Buffaloe"), by and through undersigned counsel, hereby submits this memorandum in support of his Motion for Summary Judgment. In summary, Plaintiff's claims against Defendant Hooks in his official capacity should be dismissed because Plaintiff has failed to satisfy the requirement of a valid ADA claim. Alternatively, Defendant Buffaloe is entitled to immunity under the Eleventh Amendment for Plaintiff's official capacity claim. Therefore, the Court should grant Defendant Bufaloe's Motion for Summary Judgment.

## STATEMENT OF THE CASE

On April 23, 2020, Plaintiff filed the Complaint in this matter alleging a claim under 42 U.S.C. § 1983 for alleged violations of his rights under the Title II of the Americans with Disabilities Act of 1990 (hereinafter "ADA") and Section 504 of the Rehabilitation Act of 1973 (hereinafter "Rehabilitation Act"). [D.E. 1] On February 16, 2021, the Court granted Plaintiff's motions to supplement his complaint. [D.E. 18]

Looking at Plaintiff's original Complaint [D.E. 1], Plaintiff's supplemental pleading [D.E. 10], and Plaintiff's amended Complaint [D.E. 14], Plaintiff sued Defendant Erik Hooks in his

official capacity only. On February 16, 2021, the Court filed its frivolity order under 28 U.S.C. § 1915, which found that Plaintiff's claims "survive frivolity review." [D.E. 18] Specifically, the Court dismissed Plaintiff's claim of discrimination in violation of the ADA and/or the Rehabilitation Act, but allowed Plaintiff's claim premised on failure to make reasonable accommodations to proceed. *Id.* at p. 8. On May 4, 2021, the Court granted Defendant Hooks' Motion to Deem Service of Waiver Timely, making Defendant Hooks' responsive pleading due June 21, 2021. [D.E. 30] Defendant Hooks filed a Motion to Dismiss for Failure to State a Claim on June 19, 2021. [D.E. 48] The Court denied the Motion to Dismiss on November 18, 2021. [D.E. 94]

On December 21, 2021, Defendant Hooks filed an Answer in which all material allegations were denied. [D.E. 102] On January 4, 2022, the Court granted Defendant Hooks' motion to substitute a party, naming the current Secretary of NCDPS, Eddie Buffaloe, Jr., in his official capacity only. [D.E. 107]

The Court initially issued a scheduling order, making discovery due by April 8, 2022, and dispositive motions due by May 9, 2022. [D.E. 98] The Court granted Defendant Buffaloe's motion for an extension of time, making dispositive motions due August 5, 2022. [D.E. 173]

## STATEMENT OF RELEVANT FACTS

Plaintiff alleges he requested ADA and/or Rehabilitation Act accommodations which were denied. [D.E. 1, pp. 7-8] However, Plaintiff's requests were actually misclassified by Plaintiff as ADA and/or Rehabilitation Act accommodations requests, and prison officials correctly directed Plaintiff to the appropriate policy and/or procedure to obtain the "accommodations" he was requesting.

Since April 2016 until the filing of this action, Plaintiff has submitted only two (2) Reasonable Accommodation requests, attached hereto as Exhibit A (request dated June 7, 2016) and Exhibit B (request dated April 30, 2019).

Plaintiff's first request was for "headphones which will block noise and permit listening with my hearing aid." See Exhibit A, p. 2. The determination was made that Plaintiff was requesting a medical device, and plaintiff was instructed to utilize the sick call process in order to get an order for such device. *Id.*

In Plaintiff's second accommodations request, he asked to be reassigned to a new housing unit, specifically for a "quieter environment," a "bottom bunk," and an "individual toilet." See Exhibit B, p. 1. It was determined that Plaintiff's request for reassignment and medical services were actually custody and medical requests. Plaintiff was again encouraged to follow the appropriate procedures, namely the custody protocol and medical sick call protocol. *Id.*

## STANDARD OF REVIEW

Courts should grant summary judgment where "there is no genuine disputed as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party moving for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Instead, the nonmoving party must "identify *affirmative evidence* from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Celotex Corp.*, 477 U.S. at 323. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industr'l Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). Courts have an affirmative duty to prevent factually unsupported claims from proceeding to trial. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

## LEGAL ARGUMENT

For the reasons outlined below, the Court should dismiss *with prejudice* Plaintiff's claims against Defendant Buffaloe.

### A. PLAINTIFF CANNOT SHOW A VIOLATION OF NEITHER THE AMERICANS WITH DISABILITIES ACT NOR THE REHABILITATION ACT

In order to recover under the ADA and/or Rehabilitation Act, a plaintiff must show: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by

reason of his disability." *Spencer v. Easter*, 109 Fed. Appx. 571, 573 (4th Cir. 2004). The Fourth Circuit Court of Appeals has recognized "three district grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362 (4th Cir. 2008). However, in this case, Plaintiff cannot establish a *prima facie* case under the ADA nor the Rehabilitation Act.

The record reflects that Plaintiff made requests that he erroneously classified as reasonable accommodation requests. Prison officials reviewed said requests, and encouraged Plaintiff to use the appropriate mechanisms in place to have those requests fulfilled. Plaintiff cannot show that he was denied any benefits of the prison's services, programs, or activities, and therefore his ADA and Rehabilitation Act claims necessarily fail.

## B. SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT BARS PLAINTIFF'S CLAIMS AGAINST DEFENDANT BUFFALOE IN HIS OFFICIAL CAPACITY

"The Eleventh Amendment bars suit in federal court against an unconsenting state and any governmental units that are arms of the state unless Congress has abrogated the immunity." *Coleman*, 626 F.3d at 190. The Eleventh Amendment is also applicable to state officers sued in their official capacity. *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945). When monetary damages are sought from a state officer in his/her official capacity, the "action is in essence one for the recovery of money from the state." *Id.* at 464. "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *see also Green v. Kearney*, 203 N.C. App. 260, 268 (2010) ("Actions against

officer of the State in their official capacities are actions against the State for purposes of apply the doctrine of sovereign immunity").

Since the State of North Carolina has not waived it sovereign immunity as to Plaintiff's claims under the ADA, Plaintiff's claim under the ADA can only proceed if the ADA abrogated North Carolina's sovereign immunity. Congress can only abrogate the immunity provided by the Eleventh Amendment by "stating unequivocally its desire to do so and only pursuant to a valid exercise of constitutional authority." *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005). It is undisputed that Congress desired to abrogate States' Eleventh Amendment immunity in passing Title II of the ADA. *See Tennessee v. Lane*, 541 U.S. 509, 518 (2004). However, it is questionable "whether Congress had the power to give effect to its intent." *Id.*

In this case, "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001). There are two situations under Section 5 of the Fourteenth Amendment that allow Congress to abrogate North Carolina's sovereign immunity: (1) for "cause[s] of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment," *United States v. Georgia,* 546 U.S. 151, 159 (2006); and (2) for "so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct," *Lane,* 541 U.S. at 518. As shown below, neither of the aforementioned situations are sufficiently pled in Plaintiff's Complaint.

      1.    <u>No Actual Violation of the Fourteenth Amendment</u>

The Due Process Clause of the Fourteenth Amendment provides that "no State shall…deprive any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1. "[M]atters of prison administration [are] within the discretion of the prison administrators…[and] [t]o hold that they are 'within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges.'" *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (quoting *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976)). In this case, Plaintiff cannot show any deprivation of a fundamental interest, because there was no deprivation. Plaintiff was simply redirected to the appropriate policies and procedures to obtain the items he was requesting.

Nor does the Complaint allege facts establishing a substantive due process claim. "Broadly speaking, the substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct. Only governmental conduct that shocks the conscience is actionable as a violation of the Fourteenth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001) (internal citations and quotations omitted). In this case, Plaintiff's mislabeling of his requests as "ADA accommodations requests" was corrected by prison officials per policy. This conduct by prison officials was helpful, not "shock[ing] [to] the conscience."

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall…deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The equal protection requirement does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently person who are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations and quotations omitted). In order to state an equal protection claim, a plaintiff "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Id.* at

730-31 (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Upon such showing, "'the Court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Id.* at 731 (quoting *Morrison*, 239 F.3d at 654).

In this case, Plaintiff has pled no facts to support his conclusory allegations that Defendants failed to make reasonable accommodations for his disabilities, or treated him differently because of his disabilities. However, even if the Court were to assume that Plaintiff's Complaint sufficiently alleged disparate treatment as a result of intentional discrimination, it fails to allege facts that would establish a lack of justification for any such disparity. "[W]hen a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). Disabled persons are not considered a suspect class. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445-46 (1985). Additionally, as discussed above, Plaintiff's allegations do not involve a fundamental right.

And lastly, "[w]hen equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. In a prison context, therefore, [the court] must determine whether the disparate treatment is reasonably related to any legitimate penological interests." *Veney*, 293 F.3d at 732 (internal citations and quotations omitted). Applying rational basis review to the motion to dismiss standard, the Fourth Circuit stated as follows:

> While [the Court] must take as true all of the complaint's allegations and reasonable inferences that follow, [it] app[lies] the resulting "facts" in the light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to governmental classifications.

*Giarratano*, 521 F.3d at 303-04 (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)).

Plaintiff's Complaint does not provide factual allegations sufficient to overcome the presumption of reasonableness applied to government or, more specifically, prison, policies. It does not set forth facts showing that Defendants' actions and/or inactions lacked a rational basis or a relationship to a legitimate state interest, but only cursorily contends that Defendants failed to make reasonable accommodations for his disabilities. Finally, following established prison policies and procedures surely serves legitimate penological interests which justify Defendants' actions and/or inactions. Therefore, Plaintiff has failed to allege facts sufficient to show that there was an actual violation of the Fourteenth Amendment.

2.      No Valid Exercise of Congress' Powers

Without an actual violation of the Fourteenth Amendment, Plaintiff's Complaint can only pass muster under the second situation. "In determining if a purported abrogation of sovereign immunity is a valid exercise of Congress's prophylactic enforcement powers under Section 5 of the Fourteenth Amendment, the Court applies the *City of Boerne* congruence and proportionality test." *Belk*, 2013 WL 5430426 at *6 (citing *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997)). The test includes the following three steps:

> (1) to identify the constitutional right or rights that Congress sought to enforce when it enacted Title II; (2) to determine whether Congress enacted Title II in response to a pattern of unconstitutional disability discrimination; and, (3) to determine whether the rights and remedies created by Title II are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional violations adduced by Congress.

*Id.* (quoting *Chase v. Baskerville*, 508 F. Supp. 2d 492, 499 (E.D. Va. 2007), *aff'd on other grounds*, 305 Fed. Appx. 135 (4th Cir. 2008) (internal citations and quotations omitted).

Normally, the third step is most critical.[1]  In two district court cases within the Fourth Circuit, in the prison context, courts have found Title II of the ADA to fail the third step. *Chase*, 508 F. Supp. 2d at 506; *Belk*, 2013 WL 5430426 at *9. Specifically, in *Chase*, the Eastern District of Virginia found that there was "little persuasive support for the proposition that Title II's comprehensive remedial scheme is an appropriately calibrated enforcement mechanism for [the Fourteenth Amendment] rights and the policy of judicial restraint in the prison context." *Chase*, 508 F. Supp. 2d at 501. The court stated that, "in the prison setting (1) Title II's goal of accessibility and accommodation is generally not congruent with the rights it implicates, and (2) Title II's indiscriminate demand for accommodation and accessibility on pain of money damages is wildly disproportionate to enforcing any constitutional rights." *Id.*

In *Belk*, the Middle District of North Carolina gave a similar ruling. *Belk*, 2013 WL 5430426 at *9. The court held that "[p]ermitting Tile II to abrogate state sovereign immunity…would convert services that has been offered purely as a matter of grace into vehicles of liability, and it would do so in the context of a system in which states have significantly more leeway in restricting individuals' constitutional rights." *Id.* The court ultimately ruled that enforcing the rights created by Title II of the ADA "through an abrogation of state sovereign immunity is not a congruent and proportional response to the history of unconstitutional behavior identified by Congress." *Id.*

Other courts have similarly held that Title II of the ADA does not validly abrogate state sovereign immunity. *See, e.g., Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (employment context); *Leach v. Owens*, 2010 WL 5266063, at *5 (W.D. Tx. Dec. 15, 2010) (prison

---

[1] Defendant Buffaloe does not concede the first and second steps, but, for brevity, opt not to address them in this Memorandum.

context); *Steele v. Thaler*, 2011 WL 739524, at *11 (S.D. Tx. Feb. 22, 2011) (prison context); *Dorn v. Mich. Dept. of Corr.*, 2017 WL 2436997, at *7 (W.D. Mich. June 6, 2017) (prison context).

For the same reasons noted in *Chase* and *Belk*, the Court should find that allowing Plaintiff to enforce rights he allegedly has under Title II of the ADA through an abrogation of North Carolina's sovereign immunity is not a congruent and proportional response, and therefore, dismiss Plaintiff's claim against Defendant Hooks in his official capacity due to the sovereign immunity afforded by the Eleventh Amendment.

## CONCLUSION

For the foregoing reasons, Defendant Buffaloe is entitled to summary judgment.

Respectfully submitted this the 5th day of August, 2022.

**JOSHUA H. STEIN**
**ATTORNEY GENERAL**

/s/ Bettina J. Roberts
Bettina J. Roberts
Assistant Attorney General
N.C. State Bar No. 43356
N.C. Department of Justice
9001 Mail Service Center
Raleigh, North Carolina 27699-9001
Telephone: (919) 716-6540
Facsimile: (919) 716-6761
E-mail:  bjroberts@ncdoj.gov

**CERTIFICATE OF COMPLIANCE WITH APPLICABLE WORD LIMIT**

Pursuant to LCvR 7.2(f), the undersigned hereby certifies that the foregoing memorandum complies with the 8,400-word limit applicable to a memorandum in support or in opposition to a motion (other than a discovery motion), which has been computed using the word count generated by the word processing software, counting the elements required by subsection LCvR 7.2(f)(1).

The number of words contained in this memorandum is: **3,417.**

Respectfully submitted this the 5th day of August, 2022.

**JOSHUA H. STEIN**
**ATTORNEY GENERAL**

/s/ Bettina J. Roberts
Bettina J. Roberts
Assistant Attorney General
N.C. State Bar No. 43356
N.C. Department of Justice
9001 Mail Service Center
Raleigh, North Carolina 27699-9001
Telephone: (919) 716-6540
Facsimile: (919) 716-6761
E-mail:  bjroberts@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the **MEMORANDUM IN SUPPORT OF DEFENDANT BUFFLOE'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have on this day, mailed said document to the following non-CM/ECF participant:

Steven Dixon Prentice
OPUS No. 1502120
Pender Correctional Institution
P.O. Box 1058
Burgaw, NC  28425
*Pro se plaintiff*

This the 5th day of August, 2022.

/s/ Bettina J. Roberts
Bettina J. Roberts
Assistant Attorney General