# APPENDIX - B

(1) PLAINTIFF'S MEDICAL DUTY STATUS FORM (490 form)
from Defendant's Exhibits, Doc. 161 (Discovery p. 111 of 1445)

(2) NCDPS POLICY AND PROCEDURE
CHAPTER E, SECTION .2600
REASONABLE ACCOMMODATION FOR INMATES WITH DISABILITIES

(3) ADA ACCOMMODATION DETERMINATION
DATED 06/25/19
from Defendant's Exhibits, Doc. 49-2 / 186-2

(4) ADA ACCOMMODATION DETERMINATION
DATED 07/07/16
from Defendant's Exhibits, Doc. 186-1

# North Carolina Department of Public Safety
## Medical Duty Status

| Off #: | 1502120 | Offender Name: | PRENTICE, STEVEN D |
|---|---|---|---|

___ No Work     Exp. Date: _____
___ Bed Rest     Exp. Date: _____
    Exp. Date: _____

**Housing Restriction:**

| Restriction | Expiration Date |
|---|---|
| Bottom Bunk | 09/05/2021 |

**Physical Limitation/Restriction:**

| Restriction | Expiration Date |
|---|---|
| Lifting limited to 25 pounds | 09/05/2021 |
| Pushing or Pulling limited to 25 pounds | 09/05/2021 |
| No Stooping | 09/05/2021 |
| No Mopping or Sweeping | 09/05/2021 |
| No Twisting | 09/05/2021 |

**May have the following equipment in his / her possession:**

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Eye Glasses | 08/05/2019 | 08/05/2099 | |
| Hearing Aid-R | 05/28/2019 | 11/28/2021 | |
| Extra Pillow | 02/08/2019 | 11/29/2021 | |
| Medical headphones | 09/28/2017 | 11/22/2021 | |
| Silver JCV RX 500 Over head medical earphones. Inmate wears a hearing aid. These headphones were replaced on 10/28/2018. J. Harrington | | | |
| Thermal Underwear Issue | 07/20/2017 | 12/28/2021 | |
| Brace - neck | 07/20/2017 | 11/28/2021 | |
| soft neck brace/support x 1 | | | |
| Extra Mattress | 08/01/2016 | 05/29/2021 | |
| Medical headphones | 08/01/2016 | 11/28/2020 | |
| Brace - back | 04/26/2016 | 11/28/2021 | |
| PATIENT CAN USE HIS OWN BACK BRACE PER DOCTORS ORDER | | | |
| Brace - knee | 04/19/2016 | 11/22/2021 | |
| Brace - back | 04/19/2016 | 11/28/2021 | |
| Brace - ankle | 04/19/2016 | 11/28/2021 | |
| Hearing Aid-L | 04/19/2016 | 11/28/2021 | |
| With over head ear phones to accommodate hearing radio. | | | |

**Comments:** N/A

| Browning, Diane R FNP-BC | 03/09/2021 |
|---|---|
| Health Services Staff | Date |

| Offender Name: | PRENTICE, STEVEN D | Off #: | 1502120 | Quarters: | C2DM- |
|---|---|---|---|---|---|

***ALL EXPIRATION DATES ARE AT 24:00***

Steven Dixon Prentice v. State of N. C., et al.
USDC-EDNC (File No. 5:20-CT-3150-D) Parker Poe/Rebecca L MRA

**CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

PARKER POE - 000100
Page 1 of 1

| | |
|---|---|
|   **State of North Carolina**<br>**Department of Public Safety**<br>**Prisons**<br><br>**POLICY AND PROCEDURE** | Chapter: E<br>Section: .2600<br>Title: Reasonable Accommodation for Inmates with Disabilities<br>Issue Date: 09/05/13<br>Supersedes: New Policy |

### .2601 AUTHORITY

This policy is issued by the Director of Prisons who is given the authority to manage and direct the total operations of Prisons and to establish such rules and regulations as prescribed.

### .2602 PURPOSE

Title II (Subtitle A) of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Rehab Act) prohibit public entities from discriminating against any qualified individual with a disability in their facilities jobs, programs, activities, or services. The purpose of this policy is to establish policy and procedures regarding the Prisons' commitment to compliance with the ADA and the Rehab Act. The focus of the ADA is to grant equal access with reasonable accommodations to all otherwise qualified individuals for existing jobs, programs, activities, or services offered by Prisons.

### .2603 APPLICABILITY

This policy is applicable to all inmates within the North Carolina Department of Public Safety Prisons facilities.

### .2604 DEFINITIONS

(a) Disability

    (1) A physical or mental impairment that substantially <u>limits one or more</u> of an individual's major life activities; or

    (2) A record of such an impairment; and/or

    (3) Perceived or regarded as having such impairment.

    (4) The following conditions do not constitute disabilities: transvestitism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, other sexual behavior disorders, compulsive gambling, kleptomania, pyromania, psychoactive substance abuse disorders resulting from current illegal use of drugs, the current use of illegal drugs, homosexuality or bisexuality.

---

(b) Major Life Activities - Includes such functions as caring for oneself, <u>performing manual tasks</u>, <u>walking</u>, seeing, <u>hearing</u>, speaking, breathing, learning, eating, <u>sleeping</u>, walking, <u>lifting</u>, <u>bending</u>, reading, concentrating, thinking, <u>communicating</u>, <u>working</u>, the operation of a major bodily function, including but not limited to <u>functions of the immune system</u>, normal cell growth, <u>digestive</u>, <u>bowel</u>, bladder, <u>neurological</u>, brain, respiratory, circulatory, and reproductive functions.

(c) Substantial Limitation of a Major Life Activity – A condition that renders an individual unable to perform a major life activity that the average person in the general population can perform, and the determination of which requires an individualized assessment.

(d) Physical or Mental Impairments

    (1) Physical or mental impairments include any <u>physiological disorder or condition</u>, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: <u>neurological</u>; <u>musculoskeletal</u>; <u>special sense organs</u>; respiratory, including speech organs; cardiovascular; reproductive; <u>digestive</u>; genitourinary; hemic and lymphatic; skin; and endocrine.

    (2) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

    (3) The phrase physical or mental impairment includes, but is not limited to, such <u>contagious and non-contagious diseases and conditions</u> as orthopedic, <u>visual</u>, speech, and <u>hearing impairments</u>, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

    (4) The phrase physical or mental impairment does not include homosexuality or bisexuality.

(e) Reasonable Accommodation

    (1) A modification or adjustment to the physical environment, procedures or the manner in which tasks are carried out that enable a qualified inmate with a disability to perform all essential job functions or to participate in a program or service or to use a facility.

    (2) Prisons will make reasonable modifications or adjustments to physical environment, procedures or the manner in which tasks are carried out that are consistent with legitimate penological interests in order to allow qualified inmates with disabilities the same opportunity of usability and access as non-disabled inmates, unless doing so would create an undue hardship for Prisons, cause a fundamental alteration to a program, or pose a direct threat of substantial harm to the health and safety of the individual or others.

(f) Qualified Inmate with a Disability - An inmate with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

(g) Undue Hardship – An action requiring significant difficulty or expense in the implementation of an accommodation or which would result in a threat to facility security.

(h) Prisons - North Carolina Department of Public Safety, Correctional facilities.

(i) Facility - A building or site owned, leased, used or controlled by Prisons.

(j) Prisons ADA Coordinator – A position at the Prisons Administration level who is responsible for overseeing the implementation and coordination of this policy within Prisons. For purposes of this policy and program that person will be the Social Work Program Director/designee.

(k) Prisons ADA Compliance Specialists – Certified ADA Specialist positions at the Prisons Administration level who will assist the Prisons implementation and coordination of this policy and who will be responsible for ensuring that all facilities comply with the ADA law when developing, maintaining and implementing inmate jobs, programs, activities and services. This responsibility will also involve identifying and correcting any non-compliance and/or barriers to compliance.

(l) Facility ADA Coordinator – A position designated by the Director of Prisons to ensure compliance and implementation of this policy within a prison facility. For purposes of this policy and program, that position shall be the Assistant Superintendent for Programs at each facility. In the absence of an Assistant Superintendent of Programs, the Facility ADA Coordinator shall be the facility's highest ranking Program staff member under the Facility Head.

(m) Facility Disability Case Managers – Correctional Case Managers who have been trained to assist inmates with disabilities that have been identified under the American Disability Act (ADA). Each facility will designate one or more Case Managers as their Disability Case Manager. Although this Case Manager can have other inmates assigned to his or her caseload, all ADA inmates housed at the facility will be assigned to this Case Manager. An inmate who has been flagged as an ADA inmate will be assigned to the case load of a Disability Case Manager. These Case Managers have received specialized training in assisting qualified inmates with disabilities. The Disability Case Manager will document their bi-monthly contact with the ADA inmate on the IP60/61 OPUS screen using case management note type 73 (ADA Offender Management). The Disability Case Manager will document their once a month contact with the DD inmate on the IP60/61 OPUS screen using case management note type 52 (Developmental Disability). When an inmate has been flagged "yes" for both DD and ADA, the rules and practices for DD will be used in providing case management Services for the inmate.

(n) Mental Health Social Worker – Mental Health social workers are those social workers in Health Services assigned organizationally under the Director of Mental Health and the Director of Social Work Services.

(o) Job – Is any inmate labor program assignment that is listed on the facility's OPUS Program Structure (FS34 screen), in which an inmate's assignment to the labor program is documented in OPUS, the inmate receives an incentive wage for his/her labor, and the inmate receives Gain/Earn Time Sentence Credits as defined in the Sentence Credit policy.

(p) Program – A structured intervention designed to achieve specific goals, values, and objectives. Programs have a curriculum and are typically targeted towards a particular criminogenic need. Programs are made available by Prisons to inmates for the purpose of changing inmates' behavior patterns, aiding in inmates' rehabilitation, enhancing inmates' quality of life, or improving inmates' physical and mental well being.

(q) Activity – A planned offering for inmates that provides productive interaction among themselves, staff, and the community.

(r) Service – A method of providing inmates with information and resources that are mandated by law or court order, or otherwise provided as a benefit or privilege to the inmates. Services shall also include job and program related activities for inmates, such as inmate orientation, intramural recreations, religious services and visitation or other legitimate Prisons approved services for inmate.

(s) Essential Job/Program/Activities/Services Functions – Essential functions are the basic duties and/or requirements of jobs, programs, activities or services that an inmate performs or receives. This does not include the marginal duties of the jobs, programs, activities or services.

(t) Direct Threat — A significant risk of substantial harm to the health and safety of the inmate population, prison facility, staff, or the public that cannot be eliminated or reduced by reasonable accommodation.

(u) Medically Unfit Gain or Earned Credits – Inmates are eligible for Gain or Earned Time sentence credits as outlined in the Sentence Credit Policy (B.0100) Section .0117. Medically Unfit status is an accommodation under the Americans with Disability Act (ADA).

## .2605 POLICY

It is the policy of Prisons to establish procedures for an inmate to request an accommodation for a qualified disability that affects a major life activity and to ensure that:

(a) Every inmate, including an inmate with a qualified disability, shall be housed in a manner that provides for his/her safety and security;

(b) Reasonable accommodations are made only if the accommodations pose no direct threat to the individual requesting the accommodation or cause an undue hardship on Prisons;

(c) Reasonable accommodations shall be made to the physical structure of housing for an inmate with a qualified disability to accommodate for the physical limitations of the disabled inmate and facilitate the inmate's inclusion in facility life;

(d) The Facility ADA Coordinator may authorize housing unit furnishings within the cell/dorm to be rearranged to best accommodate an inmate with a qualified disability. A visually impaired inmate shall be given bottom bunk status;

(e) Reasonable accommodations shall be made to facility jobs, programs, activities, and services to permit participation by a qualified inmate with a disability;

(f) No qualified individual with a disability shall, solely by reason of such disability, be excluded from participation in or be denied the benefits of jobs, programs, activities, or services offered by Prisons.

**.2606 EQUAL ACCESS TO JOBS, PROGRAMS, ACTIVITIES, AND SERVICIES**

Eligible otherwise qualified inmates with a disability shall have the same opportunity for access to jobs, programs, activity(s) or service options as eligible otherwise qualified non-disabled inmates.

**.2607 PROCEDURES**

(a) Facility Placement

Transfer of an ADA inmate will be in compliance with Prisons policies regarding transfer of inmates. Disability accommodation needs should be among the factors considered in making transfer and facility assignment decisions for the qualified inmate.

(b) Inmate Gain/Earned Reports

Inmates are informed by their correctional case managers of their amount of Gain/Earned time during their scheduled monthly and bi-monthly case management contacts. If an inmate disagrees with their amount of Gain/Earned Time, the inmate may utilize the administrative remedy procedure pursuant to Prisons policy.

(c) Request for Accommodation

(1) The Inmate Reasonable Accommodation Request (IRAR) Form (DC-746) will be made readily accessible to all inmates by any and all prison staff. This is a two sided form, the front page is the DC-746 (a) and the back page is the DC-746 (b). Side (a) is used by the inmate or the inmate's guardian to make a request for accommodation. Side (b) is used by the Mental Health Social Worker and the Facility ADA Coordinator to record ADA determinations and recommended accommodations, modifications or denial and explanation of delay to accommodation.

(2) An inmate who has a disability that he/she believes is not being reasonably accommodated by Prisons will submit a written request for accommodation using the (IRAR) Form (DC-746a) to his/her Case Manager. The Case Manager will document the receipt of the IRAR on the IP60/61 OPUS screen, using case management note type 76 (ADA IRAR Tracking).

(3) If an inmate is believed not to be mentally competent to make a request for guardianship, the Mental Health Social Worker will be responsible for initiating the process for guardianship according to Prisons Health Care Policy.

(4) If a guardian is assigned, he/she will be responsible for submitting the IRAR to the inmate's Case Manager. The Case Manager will document on the IP60/61 OPUS screen, using case management note type 76 (ADA IRAR Tracking) that the inmate has been assigned an ADA guardian.

(5) The IRAR Form (DC-746a) must include the inmate's specific disability(s) and the specific accommodation or service the inmate seeks. If any staff assists the inmate in completing the IRAR Form, information recorded on the form must be done using the inmate's actual word(s) and/or verbiage.

(6) Once completed, the IRAR Form must be forwarded by the Case Manager, staff or guardian to the Facility Disability Case Manager. The Disability Case Manager will contact the assigned prison facility Mental Health Social Worker to start the process of review and evaluation for ADA accommodation needs.

(7) The Disabilities Case Manager in conjunction with the Mental Health Social Worker, shall review and discuss the request, assess the validity of the medical, mental and/or cognitive functioning claim, evaluate the inmate's need (if any), and recommend accommodations that may be necessary (if any). The Disability Case Manager will only document the date the meeting took place with the Mental Health Social Worker on the OPUS IP60/61 screen using case management note type 76.

(8) Disability assessments (DC-927) will be completed by the Mental Health Social Worker assigned to the facility where the inmate that is requesting accommodations is housed. The assessment will be completed within 30 days of the inmate's request for accommodation. The results of the disability assessments

(9) The Disabilities Case Manager shall submit the recommendation for accommodation to the Facility ADA Coordinator for review and approval/denial. The Disability Case Manager will document the date and summary of the recommendation for accommodation(s) submitted to the Facility ADA Coordinator on the OPUS IP60/61 screen using case management note type 76.

(10) If the Facility ADA Coordinator approves an accommodation at the facility level, they must forward the approved IRAR Form (DC-746) with supportive documentation to the <u>Prisons ADA Coordinator</u>. If the Prisons ADA Coordinator concurs with the approval, the original IRAR Form (DC-746) will be forwarded to the Prisons ADA Compliance Specialist to review and approve any changes to the job, program, activity or service being proposed to accommodate the inmate. After the ADA Compliance Specialist reviews and acts on IRAR, then they will return the form to the Prisons ADA Coordinator for forwarding of the form back to the Facility ADA Coordinator. The action of the Prisons ADA Coordinator and Prisons ADA Compliance Specialist is final. Once the Facility ADA Coordinator
→ receives the IRAR Form, they must precede in implementation of the approved ADA accommodation(s). The Facility ADA Coordinator will document the return receipt date of the IRAR Form on the OPUS IP60/61 screen using case management note type 76. If the inmate is no longer housed at that facility, the Facility ADA Coordinator documents the date that he/she forward the IRAR Form to the Facility ADA Coordinator at the inmate's current housing facility on the OPUS IP60/61 screen.

(11) If the Facility ADA Coordinator denies an ADA accommodation request at the facility level, they will forward the completed IRAR Form (DC-746) and supportive documentation to the Prisons ADA Coordinator for final decision making. If the Prisons ADA Coordinator approves the request, the process of review, approval, and implementation continues as listed above in section .2607(b)(10) of this policy. If the Prisons ADA Coordinator upholds the denial, the original IRAR Form will be returned to the Facility ADA Coordinator. The Facility ADA Coordinator will document the return receipt date of the IRAR form on the OPUS IP60/61 screen using case management note type 76.

(12) The Facility ADA Coordinator must notify the inmate and/or the inmate's guardian in writing, using the IRAR (DC746b) of the final determination. The notice must be received by the inmate within 45 working days of the inmate's initial request. In the event a determination cannot be made within 45 working days because of circumstances beyond the control of the facility, the Facility ADA Coordinator will notify the inmate/guardian requesting the accommodation within the 45-day period of the reason for the delay and the expected date that a final determination will be made. In any event, the inmate and/or his/her guardian will be notified of the final determination within 60 working days of the date the inmate makes the initial request. The Facility ADA Coordinator will document the final determination on the OPUS IP60/61 screen using a case management note type 76.

(13) An inmate who has filed an Inmate Reasonable Accommodation Request (IRAR) Form (DC-746) which has been denied, and he/she disagrees with the determination, may submit an (DC-410) Administrative Remedy Procedure (Grievance) in accordance with Prison policy G.0300. The grievance must state  ← Griev. Rules the inmate's specific disability or disabilities and the specific accommodation or service the inmate has been denied. The Facility ADA Coordinator will document and date that the inmate disagreed and filed a grievance on the OPUS IP60/61 screen using case management note type 76.

(14) During any part of the ADA process outlined in this section of the policy, if the inmate transfers to another prison facility, the Facility ADA Coordinator is to ensure that all forms and supporting documentations are forwarded to the inmate's current housing Facility ADA Coordinator, who is responsible for ensuring that the Mental Health Social Worker (MHSW), serving that receiving facility, also receives the documentations. The Facility ADA Coordinator will ensure that documentations is made on the IP60/61 screen, using both Case Note Type 73 and Note Type 76, of the date the forms and supporting documentation were forward to the MHSW for the receiving facility.

(d) Justification for Denial of Request for Accommodation - A request for accommodation may be denied for any of the following reasons:

(1) A request for accommodation shall be denied when it would pose a risk to the safety and security of the prison facility, staff, or the public, or when the request would adversely impact other penological interests, e.g., deterrence of crime, interference with rehabilitative efforts, and maintenance of inmate discipline.

(2) In making determinations for reasonable accommodation, public safety, health, safety, and security of all inmates and staff shall take priority over an accommodation decision.

(3) Prisons need not take an action to provide accessibility to a job, program, ~~or~~ activity, or service if the action would impose or require any of the following:

(A) An Undue Burden. An accommodation that does not meet the standard of reasonableness, as determined by the Prisons ADA coordinator and the Division ADA Administrator, within a correctional setting or a NC State Agency, is an undue burden.

(B) A fundamental alteration of the purpose of the job, program, activity or service. The Prisons ADA Coordinator shall consult with the Prisons ADA Compliance Specialists when making accommodation decisions to ensure

    that the accommodation does not cause fundamental alteration of the job, program, activity or service.

  (C) Direct Threat. The Prisons ADA Coordinator should consult with the Prisons Security Section, before making a final determination on the potential risk to security posed by an inmate's requested accommodation.

  (D) Equally Effective Means. A request for accommodation shall be modified if equally effective access to a job, program, activity or service can be afforded through an alternate method that is deemed to provide equally effective access and/or equally effective communication, and will meet the standard of reasonableness [refer to (d) (3) (A) and item #12 above].

(e) Documentation in OPUS

 (1) When the evaluation assessment process (DC-927) has been completed and a decision has been made regarding inclusion under the Americans with Disabilities Act for the inmate requesting accommodations, the Mental Health Social Worker will enter the determination of eligibility on the Mental Health Encounter Screen (MH02) in OPUS. They will enter a note type "ADA" that will turn the ADA flag on to reflect approval "Y" or denial "N". At the same time, the Mental Health Social Worker will also document the type of accommodation(s) provided to the inmate on the MH03 screen in OPUS as an encounter note. The ADA eligibility entry will be reflected on the IP01 screen in OPUS under the ADA field and in the ADA field on the General Information Screen on OPUS on the Web. A blank entry on either of these fields denotes the lack of evaluation for that inmate under the ADA process.

 (2) Ongoing assessment of equal access to jobs, programs, activities and services for inmates with ADA accommodations will be completed bi-monthly by the Disability Case Manager and recorded on the OPUS IP60/61 screen using case management note type 73. The Disability Case Manager will meet with the inmate every 2 months and evaluate the accommodation and participation of the inmate in the job, program, activity or service assigned. The MH Social Worker will complete a new DC-927 Evaluation Criteria for Persons under the ADA as needed with JPAS changed or disability changes and as part of the annual evaluation.

 (3) The Disability Case Manager will document the process of acquiring, submitting and processing the IRAR Form (DC-746) on the OPUS IP60/61 screen using case management note type 76.

(f) ADA Accommodation and Provisions

 (1) Requests for all ADA accommodations will begin with:

  (A) the inmate completing and submitting the Inmate Request for Reasonable Accommodation (IRAR) Form (DC-746); or

  (B) health services staff identifying the inmate as Activity 4 or 5; or

  (C) through referral from staff (other than health services staff) related to a Administrative Remedy (DC-410), grievance filed by the inmate concerning issues with accommodations under the ADA, and as defined in this policy; or

  (D) any staff referral based on the current condition of the inmate.

 (2) Considerations for Medically Unfit

 The determination of a Medically Unfit Accommodation will be done by utilizing the protocols outlined below and following the processes illustrated in the Flow Chart/Decision Tree of Protocols included with this policy.

  (A) If the inmate is found not to be disabled under the ADA upon completion of the Disability Assessment (DC-927) by the Mental Health Social Worker, then no further action is needed and the inmate is ineligible for Medically Unfit Gain/Earn time.

  (B) If the inmate is found to be disabled, the inmate is then evaluated to determine if he/she is otherwise qualified for the job, program, activity or service being considered by the Mental Health Social Worker and the Disability Case Manager. The inmate's capabilities will be compared with the description and essential functions for the job, program, activity or service being considered.

  (C) If the inmate is found not to be qualified for the job, program, activity or service being considered then the inmate, if eligible, is placed in Assignment Pending until such time a job, program, activity or service is available that he or she is qualified to be assigned.

  (D) If there is a job, program, activity or service available, the accommodations being requested are evaluated for reasonableness (i.e. or not causing an undue burden on Prisons, and/or the potential to cause a negative impact on the safety and security of the facility, any inmates, staff, or visitors).

  (E) If the inmate is found to be disabled, but otherwise qualified, and the job, program, activity or service is available, and accommodations can be provided, the inmate is placed into the job, program, activity or service and receives gain/earned time credit at the rate designated for the job, program, activity or service assignment.

(F) If the inmate is found to be disabled, but otherwise qualified for ADA accommodation, and the job, program, activity or service is available, and accommodations can be provided, and the inmate refuses to be assigned to the job, program, activity or service, the inmate will be subject to disciplinary action.

(G) If the inmate is found to be disabled, but otherwise qualified for an available full-time job, program, activity or service, and the ADA accommodations cannot be provided, the inmate is assigned to the Medically Unfit status and receives the Medically Unfit Sentence Credits. The determination of the Medically Unfit status as an ADA accommodation will be documented by the Mental Health Social Worker on the inmate's OPUS MH02 Encounter screen.

(H) When an inmate is classified as Medically Unfit, the Disability Case Manager will refer the inmate to activity code K01014 for Medically Unfit status. The Facility ADA Coordinator will be the final approving authority for the inmate assignment to Medically Unfit (K01014) in accordance's to the final decision recorded on the IRAR (DC-746) form.

(I) Medically Unfit Sentence Credits is an accommodation under the ADA and is subject to the policy and procedures outlined here and under the Sentence Credits Policy (B.0100).

(J) If an inmate is flagged Medically Unfit status by K01014 assignment, and the inmate receives a Control action (HCON, MCON, ICON) Medically Unfit Gain/Earned Time Credits will end.

(K) If an inmate is flagged Medically Unfit status by K01014 assignment status, and the inmate is placed in Protective Control (PCON), the Medically Unfit Sentence Credits will automatically stop. The Protective Control inmate will automatically begin receiving Earned Time I credit if eligible by the Sentence Credits Policy B .0100.

(L) When an inmate who was previously flagged Medically Unfit status has completed the Disciplinary Control status (DSEG) assignment, and is currently in Assignment Pending status, the inmate must follow the same rules as for any other Assignment Pending inmates to received Earned Time I Sentence Credits as described in Sentence Credits Policy B .0100.

(M) If a Medically Unfit inmate has been assigned to Administrative Segregation and is returned to regular population without being placed on DSEG or assigned to HCON, MCON, ICON the Disability Case Manager should immediately refer the inmate to Medically Unfit status code K01014 to prevent disruption in the Medically Unfit Sentence Credits. The Disability Case Manager will be required to monitor their ADA Medically Unfit status caseload for changes to any Medically Unfit inmates, whose population status may have changed. Referrals (K01014) must be made in a timely manner for inmates to resume earning Medically Unfit Sentence Credits.

(N) Medically Unfit inmates may request Restoration of Forfeited Good Time, Earned Time, and Meritorious Time as outlined in the Sentence Credits Policy B .0100, section .0115.

(O) Inmates who were previously flagged Medically Unfit but are currently in Assignment Pending and are being considered for a full-time job, program, activity or service assignment who are now requesting an accommodation must submit a new IRAR (DC-746) and go through the process as noted above.

(g) Inmate Programs

(1) No inmate shall be discriminated against in participating in a job, program, activity or service based on his/her disability. Prisons is required to make reasonable accommodations to known inmates with qualifying disabilities.

(2) Prisons will modify jobs, programs, activities or services to the extent that a qualified disabled inmate can participate unless doing so would pose undue hardships for Prisons or pose a threat to security. An inmate will not be placed in a job, program, activity or service which clearly jeopardizes his/her safety or security.

(h) Timeframes

(1) Inmates that have been flagged "yes" for ADA in OPUS on the IP01 Screen will have contact with their Disability Case Manager on the same schedule as other inmates with their Case Manager.

(2) Inmates flagged "yes" for Developmental Disability (DD) on the IPO1 Screen will have contact with their Disability Case Manager once every 30 days in compliance with the Prisons Health Care Developmental Disabilities policy.

(3) Disability assessments (DC-927) will be completed by the Mental Health Social Worker assigned to the facility where the inmate that is requesting accommodations is housed. The assessment will be completed within 30 days of the inmate's request for accommodation.

(4) Final Determination for ADA accommodation request must be made by the Facility ADA Coordinator along with the Prisons ADA Coordinator within 45 working days of the inmate's initial request. In the event a determination cannot be made within 45 working days because of circumstances beyond the control of

the facility, the Facility ADA Coordinator will notify the inmate/guardian requesting the accommodation within the 45-day period of the reason for the delay and the expected date that a final determination will be made. In any event, the inmate and/or his/her guardian will be notified of the final determination. When legitimate reasons prevent a determination being made within the 45 day working period, then in this case, the determination must be made within 60 working days of the date the inmate makes the initial request.

(5) The Facility ADA Coordinator will be responsible for grievances relating to ADA accommodation requests being completed per the 90 day time frame in accordance with Prisons Administrative Remedy Procedure policy section G.0307.

(i) Annual Evaluation of Eligibility under the ADA

Inmates found to meet the criteria for inclusion under the ADA will be re-evaluated annually to assure the appropriateness of ongoing inclusion and provision of accommodations under the ADA.

(j) Training

(1) ADA Training will be provided to all current Department of Public Safety Prisons staff on the policy and procedure regarding the ADA Process for inmates. New employees will be provided ADA Training as part of new employees Orientation.

(2) All Department of Public Safety Prisons staff are mandated to annually attend ADA for Inmates Training.

(3) All Department of Public Safety Prisons staff will be trained through use of audio and visual methods and will be provided printed educational information on the ADA Policy and Procedures regarding the ADA and inmates.



Director of Prisons    Date    9/5/13

E.2600_09_05_13.doc



**Flow Chart/Decision Tree of Protocols Concerning Inmates Evaluated According to the ADA for Consideration of Awards of Medically Unfit Gain/Earned Time**

# North Carolina Department of Public Safety
## ADA Determination

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | PRENTICE, STEVEN D | | | Off #: | 1502120 |
| Date of Birth: | 04/18/1965 | Sex: | M | Facility: | LANE |
| Date: | 07/07/2016 13:50 | Provider: | Ellington, Meredith R MSW | | |

**Comments**

DC-746 DATED 6/7/16 REQUESTED "HEADPHONES". DC-927 COMPLETED 6/27/16 VERIFIED THE FOLLOWING HEALTH CONDITION: UNSPECIFIED HEARING LOSS, UNSPECIFIED EAR. REQUEST FOR HEADPHONES SHOULD BE ADDRESSED THROUGH SICK CALL PROCESS.

**PULHEATDMR:**

| Date | P | U | L | H | E | A | T | D | M | R | DD | ADA | Provider |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/07/2016 14:51 | | | | | | | | | | | | N | Ellington, Meredith R MSW<br>Social Worker III |

**Co-Pay Required:** No  **Cosign Required:** No
**Telephone/Verbal Order:** No
**Standing Order:** No

Completed by Ellington, Meredith R MSW Social Worker III on 07/07/2016 14:51

# North Carolina Department of Public Safety
## ADA Recommendation

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | PRENTICE, STEVEN D | | | Off #: | 1502120 |
| Date of Birth: | 04/18/1965 | Sex: | M | Facility: | LANE |
| Date: | 06/27/2016 15:55 | Provider: | Kirby, Phillip A B.A. Social | | |

**Comments**

DC-746 received by Disability Case Manager 06/07/2016. DC-927 completed 06/27/2016. Mental Health Social Worker and DCM met for final accommodation recommendation 06/27/2016.

Inmate Steven Prentice wrote that he has, "Deaf in my left ear and use an in the ear sonic hearing, and which provides a level of hearing and improves understanding of speech, announcements, direction of sound."

He wrote that I am unable to, "Use almost all standard in the ear, round ear buds for listening to radio. Thus I am required to utilize over the ear headphones and behind the ear buds. Noise is also a prohibitive."

The accommodation requested, " I request provision of or be allowed to purchase head phones which will block noise and permit listening with my hearing aid. Note: I have already filled an administration remedy related to loss of ear buds."

Inmate Prentice is requesting a medical device as an accommodation and will be instructed to utilize the sick call process in order for the unit physician to write an order for such a device. he will be instructed to specifically request the hearing device from the Lead Nurse during said sick call. He is determined to be an unqualified, not a disabled person. This will be the recommendation that will be forwarded to the FADAC at Lanesboro CI.

**Co-Pay Required:** No  **Cosign Required:** No
**Telephone/Verbal Order:** No
**Standing Order:** No

Completed by Kirby, Phillip A B.A. Social Worker II on 06/28/2016 18:30

EXHIBIT B

# North Carolina Department of Public Safety
## ADA Determination

| | | | | |
|---|---|---|---|---|
| Offender Name: PRENTICE, STEVEN D | | | Off #: | 1502120 |
| Date of Birth: 04/18/1965 | Sex: | M | Facility: | TABO |
| Date: 06/25/2019 12:00 | Provider: | Feaster, Sophia G M.S. Division | | |

**Comments**

DC-746 DATED, 4/30/19 REQUESTED, "I REQUEST REASSIGNMENT TO BLUE "C" POD WHICH WILL COVER 3 OF 4 PHYSICAL DISABILITIES (A THROUGH C) HOPEFULLY PROVIDING A QUIETER ENVIRONMENT FOR HEARING NEEDS, BOTTOM BUNK FOR LIMITATIONS AND SAFETY AND INDIVIDUAL TOILET FOR 1BS-D, I WILL CONTINUE TO PRESS MEDICAL FOR BETTER TREATMENT OF ALL SERIOUS MEDICAL NEEDS". DC-927 DATED, 5/24/19 VERIFIED THE FOLLOWING HEALTH CONDITIONS: PRESBYOPIA, NONINFECTIVE GSTROENTERITIS AND COLITIS, UNSPECIFIED, RECTAL PROLAPSE, UNSPECIFIED HEARLING LOSS, UNSPECIFIED EAR, CERVICALGIA, MIXED HYPERLIPIDEMIA, OTHER ULCERATIVE COLITIS AND ENCOUNTER FOR IMMUNIZATION. THERE ARE NO RESTRICTIONS NOTED. ADA ACCOMMODATIONS FOR REASSIGNMENT TO "BLUE POD" AND MEDICAL SERVICES ARE CUSTODY AND MEDICAL REQUESTS THAT SHOULD FOLLOW CUSTODY PROTOCOL AND MEDICAL SICK CALL. ADA ACCOMMODATIONS DENIED.

| | | |
|---|---|---|
| Co-Pay Required: | No | Cosign Required: No |
| Telephone/Verbal Order: | No | |
| Standing Order: | No | |

Completed by Feaster, Sophia G M.S. Division ADA Coordinator on 06/25/2019 16:04

# North Carolina Department of Public Safety
## ADA Case Consultation

| | | | | | |
|---|---|---|---|---|---|
| Offender Name: | PRENTICE, STEVEN D | | | Off #: | 1502120 |
| Date of Birth: | 04/18/1965 | Sex: | M | Facility: | TABO |
| Date: | 05/24/2019 15:00 | Provider: | Smith, Mary J B.S. Social | | |

### Comments

DC-746, Opus, and HERO records reviewed 052419, DC-927 Completed 052419, Organ Systems: ADD, SDD, Other (Digestive Disease/Disorder); Consultation with DCM and Recommendation: None 052419, as inmate request are custody and medical in nature; Documents are attached and originals forwarded to the FADAC for processing.

**Co-Pay Required:** No  **Cosign Required:** No
**Telephone/Verbal Order:** No
**Standing Order:** No

Completed by Smith, Mary J B.S. Social Worker II on 05/29/2019 11:08

Rcd 5/13/19 mp



# North Carolina Department of Public Safety
# Division of Adult Correction/Prisons

## INMATE REASONABLE ACCOMMODATION REQUEST (IRAR) FORM

I request reasonable accommodation due to my impairment. I understand that this is only a request, which will begin the inquiry into whether or not I am entitled to receive a reasonable accommodation. I also understand that my housing may not be immediately affected while my request is under consideration. I will be within my rights to file a grievance through the inmate grievance process should I not agree with the determination made regarding this request for reasonable accommodation.
Note: Appropriate Division of Adult Corrections staff may assist an inmate in completing this form.

I am/have (State Impairment) Physical disabilities for Hearing (deafness), musculoskeletal (neck/back injuries requiring braces)(see 490) and Digestive (IBS-D with constant bleeding and diarrhea, which causes me to use toilets 6-8 times in a normal day or more. I have a lot of arguments/issues with roommates who are intolerant of bio-hazard bags, blood in toilet, tissue use, frequent toilet use causing confrontations. See, ADA Title II 2.2000 (physical impairments) and Title II 2.4000 (major life activities)

I am unable to (Describe Limitation or Disability): (A) effectively hear/understand officers, announcements, conversations in dorm; (B) safely climb/descend bunk ladder due to foot, ankle, knee, back issues; (C) freely share toilet due to stigma and fear from roommates over bleeding, room use for toilet; and (D) to obtain treatment by specialists to affect positive changes in health status. See, 28 CFR 35

Accommodation Requested: I request reassignment to Blue "C" pod which will cover 3 of 4 physical disabilities (A thru C) (hopefully) by providing a quieter environment for hearing needs, bottom bunk for limitations and safety and individual toilet for IBS-D. I will continue to press medical for better treatment of all serious medical needs.

A request for an accommodation may be denied if the Prisons Section cannot adequately evaluate the request without reviewing OR without access to health information relevant to the accommodation you may be seeking. Your health information is private and cannot be revealed to without your permission. Do you wish to provide a waiver that allows to obtain health information from Prison Health Services or any other health care personnel, private physician or clinic, for the purpose of evaluating your accommodation request? You may revoke your waiver at any time by providing written notice of the revocation.

[✓] I do wish to give access to my health information for the limited purpose of having DAC evaluate my request for an accommodation. (See also: PRENTICE V. FBOP, U.S. Dist, 5:18-CT-3312-D, EDNC)

[ ] I do not wish to allow access to my health records to evaluate my accommodation request. I understand that if determines that my request cannot be properly evaluated without access to my health information, my request for an accommodation may be denied for this reason.

| Inmate's Signature: S+o D. R+ | Date: April 30, 2019 |
|---|---|

Staff Accepting/Assisting with Completion of this Application must forward this form to the Facility ADA Coordinator for a determination.

| Staff Name/Rank/Title (Print): Patricia Buttler, Correctional Case Manager | Staff Signature: | Date: 5/2/19 |
|---|---|---|

Original to: Facility ADA Coordinator; Copy to: Inmate.
*This form is not to be amended, revised or altered without approval of the Health Services Forms Committee.*

Inmate Name: PRENTICE, STEVEN
File: Inmate Health Record
Inmate #: 1502120

DC-746 (a) *(Revised 02/13)*
Unit #: BLUE D03B



# North Carolina Department of Public Safety
## Division of Adult Correction/Prisons

### INMATE REASONABLE ACCOMMODATION REQUEST DETERMINATION FORM

Facility or Division ADA Coordinator Determination:
☐ Approved ☐ Denied ☐ Modified Initials: _____ Date: _____

Specific accommodation provided:

Explanation of modification or denial (if applicable): *Offender's requests pertain to custody and medical and should be addressed by submitting his requests to them.*

*An inmate has the right to file a grievance through the inmate grievance process should he/she not agree with the determination made regarding a request for reasonable accommodation.

Explanation of delay, if any:

Facility ADA Coordinator's Signature: _____ Date: _____

Inmate's Signature: _____ Date: _____

Division ADA Coordinator's Signature: _____ Date: _____

Served upon inmate by:
Staff Name/ Rank/Title (Print): _____ Staff Signature _____

Date Served: _____

Completed/Signed Original to Inmate Health Record.
Copies: Inmate, Facility DIB CM, Facility ADA Coordinator, & Division ADA Coordinator.

*This form is not to be amended, revised or altered without approval of the Health Services Forms Committee.*

File: Inmate Health Record

Inmate Name: PRENTICE, STEVEN
Inmate #: 1502120

DC-746 (b) *(Revised 02/13)*

Unit #: BLUE D03B

TO: FACILITY ADA COORDINATOR.　　　　　　　　　April 30, 2019

Please, find the enclosed Request for Accommodation form from me. I wanted to let you know that in addition to this request, I have also: sent a request form to my Unit Manager for Assistance; sent numerous sick call requests for treatment; and filed a Grievance due to toilet tissue issues (as related).

Meanwhile, I take medications for symptoms as prescribed, even though I do not receive medications for actual conditions, except cholesterol and hypothyroidism.

The Audiologist at Central Prison has requested new hearing aids for me and Dr White (here) made a UR request for a Gastrointestinal specialist to form a treatment plan.

My spinal issues for stenosis in my neck and lumbar disc problems may require more to address. I have constant problems with most activities and wear my braces as needed (which is a lot).

All of this makes living with a lot of fellow prisoners and some staff very difficult. I humbly beg for your assistance with my request for accommodation.

Respectfully,

Steven Prestre #1502120